All right, just confirming Ms. Christensen? Yes, your honor. And Ms. Bonamici? Yes, your honor. Well, good morning to both counsel. We are here to hear argument in the case of United States against Bethany, number 191754. And because we're doing it exclusively on this zoom platform, we don't have the usual timekeeping. So I will ask Ms. Christensen how much time she wants for rebuttal. I believe I reserved four minutes or minutes. Okay, I don't have the bench cards in front of me, unfortunately. So I will notify you when you have reached the four minute mark. This is otherwise a 15 minute aside case. And I will Christensen and I represent the appellant Rashad Bethany in this case. Congress intended the First Step Act to be remedial legislation, legislation to remedy the harsh sentences prescribed by 21 USC 841. Despite its name, the act is not the first step toward this remediation. It was the latest step in a series of steps of statutory and guidelines changes meant to correct the wrongs of the past. Mr. Bethany was eligible to receive the benefit of those corrections, but he did not. The first question this court must face is whether the First Step Act applies at resentencing. And I'm aware that the court has previously considered this approximately two weeks ago in the Uriarte case. And this is a similar case, although that case involves 924 C, and this one involves 841. So can I ask you, Miss Christensen there, your client may not be in a big group of people. I mean, your client, at the moment, the First Step Act is passed, actually has had the prior sentence vacated. So he doesn't have one somebody who's sentences on appeal, somebody who's in the middle of 2255 proceedings, it seems to me by your logic would not be entitled to the benefits that would come to somebody who was not under a sentence as of the day that the First Step Act is passed. Is that correct? Correct. The focus is, of course, on the word imposed. And whether there's a sentence imposed, that's where the line is drawn, such as the Pearson case, the sentence was imposed, and he was on direct appeal. So if this court had had reversed or remanded for some other reason, perhaps for resentencing, then the argument, we believe could be made that that sentence is now vacated, and will be reimposed, but that's still imposed. So yes, Mr. Bethany is in a rather unique situation that I don't think will occur in very many cases where he was essentially had a vacated sentence at the time the First Step Act was enacted. So he hadn't been sentenced at that point. He was incarcerated because he had been convicted, but he was not under a sentence. It's just as though a conviction had been handed down by a jury or by a guilty plea or whatever, and sentencing hadn't yet happened. Is that your view? Exactly. So he stood convicted. And is this a 404 issue, or are you saying that this is a 401 issue? It's actually both, Your Honor. So 404 applies to his prior convictions, and the government conceded that if the First Step Act applied, Mr. Bethany no longer had prior convictions that qualified for the increased statutory ranges under 851 and 841 of Title 21. But the issue, of course, is whether it applies. So it is a 401 that lowers his mandatory minimum. Primarily, that's the issue here, although it does also lower the maximum when you see it in conjunction with 404. So 404 is a little bit of a different issue because that's the question of whether the Fair Sentencing Act applies to him and whether it applied to him before. And because of the nature the procedural nature of Mr. Bethany's case, the first time he was sentenced, the court did, in fact, consider the provisions of the Fair Sentencing Act. The judge says that. He says he was sentenced after the Fair Sentencing Act, so he did get that benefit. What's wrong about that statement? He got that benefit the first time around. So that benefit came supposedly in two pieces. One is a lower base offense level under the guidelines, and the other was perhaps a lower statutory range from 20 to life to 10 to life. The district court found by preponderance of the evidence that there was enough crack involved in the case, at least 280 grams, that the 20 year to life, even under the Fair Sentencing Act, would apply. Mr. Bethany raised that issue on appeal, that it was in a lean error. And this court held that that was harmless. Our argument now is that it is still in a lean error, but it is no longer harmless because of the other changes that have occurred. His statutory minimum should not be 20 years. It should be, if everything applies appropriately, five years. And that's a significant bump downwards. I guess it's not a bump, it's a fall downwards that the court should have considered. Ms. Christensen, it's Judge Scudder. On the drug quantity finding though, wasn't that effectively renewed, or maybe a better way to say it is left, or alternatively untouched at the resentencing? In other words, Judge Leinenweber really didn't see occasion to revisit it, at least as I read the transcript. Right. He did not revisit his findings. Defense counsel, if I'm remembering correctly, did put forward the lean argument again, saying the only amount that had been found beyond a reasonable doubt was the 160 grands that Mr. Bethany had conceded or admitted that was involved. And said again, it was in a lean violation for the district court to make this finding this time around. The question is, of course, is it harmless at this point? And we believe based on all the changes that it can't be harmless any longer, even if it might have been during the first direct appeal. That's what we said in the first appeal, because we said because he got 25 years in prison, quote, the statutory minimum had absolutely no effect on his ultimate sentence. So, that I take was a harmless error statement. Correct. Yeah. And the court made some considering. I believe he said the statutory minimum was the furthest from his mind when sentencing Mr. Bethany. And while that seems to kind of be a harmless error nail in the coffin, shall we say, the point is, is the district court still thought that the mandatory minimum was 20 years. And when you impose a sentence of 250 years with a 20, 250 months with a 20 year mandatory minimum, I won't talk myself into more time. But then when that drops to 10 years, or even to five years, I think that that's a significant consideration the judge should have had the right set of factors in his mind and did not. So that's so essentially, even though it looked like. Let me just ask you one other question before you have to sit down. I take it that in We could figure out what Mr. Bethany's sentence was under the 2005 book, as though nothing had ever happened. And then go back under a 3582 and figure out which retroactive amendments would then lower the sentence and do it in two steps. Or what seems to me you're arguing is that two steps is is a wasteful way of doing it. And there's no reason why the district court couldn't consolidate those two inquiries into one proceeding. But essentially, somebody else sentenced under the 2005 book would be able to take advantage of retroactive amendments, right? Absolutely. And that's essentially it's a at that point, a judicial economy. I mean, yes, Mr. Bethany can go back and ask for the 3582 reductions. If this case, whatever this case does, frankly, unless this court sends it back. But it does. It is interesting that he had two co defendants. And one of them did not seek 3582. But that's because he was released six months after he was sentenced. The other one did and received a reduction under the First Step Act for 3582. So it does. He can do it that way. But it seems to be since Judge Lyndon Weber will make the decision across the board, we're not involving another judge, that it should have been done all at the same time, and could have been done all at the same time as a package deal, because it's also interrelated. So essentially, he didn't get the benefit of the Fair Sentencing Act or resentencing because they went back to the 2005 guidelines, and use the 2005 guidelines, which was correct under Pew, and then but didn't then give him the benefit of the changes that were made retroactive. This is not a windfall for Mr. Bethany, these are these are retroactive changes that everyone, or most people who were sentenced under 2005 crack guidelines would have received. So I'm unsure of how much time I have left, but okay, you have like two more minutes. But if you'd like to reserve the remainder of your time, that's fine. I will. Yes. Thank you, Your Honor. Thank you. Is Bonamici. Your Honor, the district court did not err in failing to apply Section 404 of the First Step Act in this case, because the defendant did not meet the statutory requirements set forth in the plain language of the statute that a sentence, he must not have had a sentence imposed, or actually at the language of this case, he must not have received a sentence, or of this provision, must not have received a sentence prior to the enactment of the Fair Sentencing Act in 2010. How does that intersect with the fact that once the first sentence is vacated in the 2255 proceeding, he's not under a sentence? I mean, the BOP couldn't compute how long he's supposed to stay in prison. He's in exactly the same position as somebody awaiting sentencing. Of course, he can be detained under the normal rules that allow that kind of pre-sentencing detention. But I'm having trouble figuring out how he's under a sentence that's been imposed when there is no sentence. Well, the question, we would say that the statute, the question is not whether he's under a sentence, but whether he has received a sentence. And in the context of Section 401, whether a sentence has been imposed. Why do you ignore, then, the court's decision to erase it? I mean, once the sentence has been imposed under even the most egregious circumstances, that's, what in the statute requires us to understand the word imposed that way? As opposed to imposed meaning you are now under a criminal justice act, a criminal sentence that has not yet been set aside. That would be all of the people on appeal, all of the people with the 2255s. I actually think most people would easily fit under the rule that you're talking about. But people in Mr. Bethany's situation seem to me a bit different. Well, Your Honor, there is a different language that's used by Congress here. And this is where Congress drew the line. They easily could have drawn the line on the topic of whether the sentence has become final. No, but I'm saying non-final is fine. I'm saying when you have finally been determined not to have a sentence, when the sentence has been vacated and there is no sentence in place, that's the line that I'm concerned about. But that line is present in the language of the statute. The statute says the defendant has not received a sentence as of August 2010 when the Fair Sentencing Act is enacted. And in the context of section 401, the line is the defendant, there has been no sentence imposed on the day of enactment, in that case, December of 2018. That's the line drawn by Congress. Well, and let's focus on the December 2018, a day on which he has no sentence. Historically, a sentence had been imposed, but it's as though it had been imposed by a biased judge or it had been imposed in the situation here, as you're aware. And I'm just giving you other hypotheticals, though, of reasons why a sentence might be set aside. And the court, and I'm sorry, Congress could have easily decided that that was a distinction they wanted to make. But that is not the distinction that the statute makes. And I understand your point in terms of why wouldn't that have been a better place to draw the line. And reasonable minds can differ over that, I suppose. But the fact is, in the very same statute, there are other provisions that do apply, regardless of whether a sentence was imposed. What's the point of having the provision relate specifically to the date of enactment? And drawing the line there, the date of enactment, had a sentence been received, had a sentence been imposed? Well, yeah, I mean, so you could look at the date of enactment and say, there are a small number of people, those whose trials are not over yet, or those in Mr. Bethany's situation, and as you well know, 2255s are not granted every day. It's a rare event, indeed. But for that small set of people who are not under an imposed sentence on the date of the First Step Act, why isn't that exactly what Congress was talking about? We're forbidden these days to look at legislative history, but it seems quite clear that Congress was trying to make the benefits of the Fair Sentencing Act available in an equitable way. Well, Your Honor, in the government's view, it's not quite clear from the language of the statute that that is the line they were drawing. What's clear from the statute is the line that they were sentences or had imposed upon them sentences prior to the date of enactment. That's the line that they drew. Congress knows very well how to use different kinds of language to draw different kinds of lines. I mean, as the Court held in Pearson, the word imposed is an important word that has very clear meaning, and to use that word in the context of 401 seems to me to be it is not something that it is subject to our ignoring based on considerations that are not addressed in the statute and based on words that are not used in the statute. I mean, those are just not things that are appropriate to determining Congress's plain language here. Ms. Bonamici, can I ask you a slightly different question just to get the benefit of your view on, and it's a point that Ms. Christensen has raised, and it's in the brief sum about a lien. What, in the government's view, is the proper way to think or not think about a lien given where we're at in this matter? In the procedural posture of this case, a lien is not to be applied retroactively to cases going backwards, and a lien doesn't have anything to do with this case at all because this Court, in applying the Fair Sentencing Act, made a finding that the defendant was guilty of possessing at least 280 grams of crack, and that finding was based on a case that was before him on resentencing after everything had already taken place, right? But there's no jury finding and there's no concession to that, and the problem I have with the lien is that we may have been perfectly correct earlier on, everybody may have been correct, that the statutory minimum had no effect on earlier sentences when it was 20 years because of the length of the sentences, but it's a harmless error point. There's no question after a lien that mandatory minimums are subject to the same rules about the need for a jury finding. That was the whole point of Supreme Court's deciding a lien. It was the point Justice Thomas had been making for years, and now, if there's a chance of a much lower statutory minimum, what used to be a harmless error is an error that potentially could have a significant impact. Well, it might in another case, but it's pretty clear that it would not in this case. Where is the admission or the jury finding? Well, I'm not sure. What I'm saying is, in terms of harmlessness, the question that you're posing or the issue you're raising is harmlessness. What I'm saying is that from the beginning, the district court imposed a sentence well above the mandatory, even the higher mandatory minimum at that point, and then when given an opportunity to resentence the defendant, did that very thing again. The court's comments that Ms. Christensen mentioned, the mandatory minimum is the furthest thing from my mind, is what the court said. The mandatory minimum played no role in affecting the sentence in this case, and there is no question that Section 401, there's no question in our view that Section 401 that uses the language imposed. There's no way to ignore that language and determine that the statute says something entirely different, which is the only way that you could even conceive of a mandatory minimum here being substantially lower. Here's how it would come out. I mean, I don't know. Maybe the judge would ignore everything, but if Mr. Bethany is right in one way or the other, either in one proceeding or in a 3582, he winds up with the guidelines range as low as 151 to 188, you have to postulate that the district court would wildly disagree with the advice from that guidelines range and still impose a sentence which would now be double the top of the guidelines range practically, or the bottom anyway. Judges do pay attention to the anchoring effect of a guidelines range. But recall that the guidelines range isn't what Aline addresses. The guidelines- But if the Aline error is corrected and the statutory minimum allows the judge to listen to the guidelines, then we would have a different situation. But the guidelines don't- I mean, there is a small change in the guidelines based on the progress, but the guidelines, which by the way, we should not lose sight of the fact that we're only here because the defendant did not want the Fair Sentencing Act reduced guidelines to apply to him because he calculated that the 2005 guidelines were more favorable to him. No, and when the most he can get, as far as I'm concerned, is to be sentenced like everybody else under the 2005 book, you know, take the good with the bad with the 2005 book. But there are some reductions that other people sentenced under the 2005 book received because the commission itself said that these were retroactive changes. And that would be the way to put Mr. Bethany on an even ground with those other folks. Right, and those- And on Aline. And those also would not allow for a significant reduction. I mean, we're talking about the guidelines- I mean, the guidelines issue is a crack issue. It has nothing to do with the recidivist question, right? The crack guidelines now apply- they are slightly lower than they were before, but given the quantity of crack cocaine that this defendant's offense involved, it's still- I mean, this is not like a major swing here. That's the reality of the guidelines. The only way to get a five-year mandatory minimum and a guideline level of 155 is to remove any possibility of the judge considering the actual fact of the offense in determining the guideline range. And I mean, that's what would be necessary. And that's not- Let me ask you a question on- let me just ask you a question on that front. I just- there's a part of this that- and it may just be my confusion- that sounds circular. In other words, if Mr. Bethany were hearing what you're saying, Ms. Bonamici, he'd say, no, no, no, no, no, no, hold on. The judge can't make those findings under Aline. That's my point. The jury needs to make those findings. That's true. He'd say you're right as far as what the district court has found as far as drug quantity goes, but my point's altogether different than that. It doesn't depend upon a district court finding at all. The jury needs to make the drug quantity finding, and that never happened. Then what we would have to say is that an analysis under the guidelines is different than an analysis under the statutes. The statutes set the parameter, and they are- they must be a- an admission nowadays by an admission or a finding by a jury, right? But those are just- those are the upper and lower ends. What happens in between is based on the guidelines, and the guidelines are still determined by the district court. So that's how I would explain it. And what I'm- what I'm trying to say is- and you know what? It is kind of circular, and you do find yourself- in trying to analyze this, you find yourself switching off between the statutes and the guidelines over and over, and have to remind yourself to stay on track as to statutes on this side and guidelines on the other. That's- that's definitely true. So I agree with your assessment of the feeling that you get from it, but the reality is the guidelines still exist. The amount of crack that's involved in this case is still significant, and as you- at least 280, but his actual math that's reflected in the- in the discussion was that even at a very, very conservative level, the amount was- the quantity involved in this offense was way higher than that, way higher. I mean, the conservative math using 15 grams per day for 136 days, I mean, it's over 2,000 or over two kilos. So we're not talking about, you know, a small amount of drugs here, and this- and- and what's very obvious from the record is that the district court had that in mind. Even though he- he calculated the guidelines at a very conservative level, he understood the significance of the defendant's conduct and the seriousness of the offense. So on resentencing, even with the 200- 2005 guidelines, even eliminating all of those increases that it's- that would apply if the 2012 guidelines were applied. That's why the 2005 guidelines, by the way, are better, because the amount of reduction that comes from the Fair- Fair Sentencing Act and the guidelines promulgated under that act is not enough at all to make up for the- the increase in the specific offense characteristics that the defendant was found to have qualified for. So that- And the other really big factor, you know, again, this takes us back to our earlier discussion, is the Fair Sentencing Act's change in the types of predicate offenses that would make you subject to a longer sentence, going to, you know, the serious felony language. That's right. That would change the- That's really the money thing. The mandatory minimum, right. Yeah. But it, again, it wouldn't change the guidelines level based on the crack. And, you know, what it would effectively do if this were all done in one proceeding, judicial efficiency, blah, blah, blah, what it would do is it would provide him with the benefit of having- using both books. I mean, that's what- that's what it comes down to. But I don't think so. It only- only insofar as everybody else who was sentenced under the 2005 guidelines is entitled to the small number of years promulgated by the commission. So I don't think that- I don't think it's a split book problem as long as you're staying on a par with the other 2005 defendants. But I see what you're saying. But in those cases, they- number one, they'd be subject to 3582, which is the other piece of this, which has a just- an absolute clear, not questionable limit to the low end of the guidelines range. And so you- that would factor in, too. So the real question- the real question isn't whether this defendant would actually benefit in this case, although that's- that is something that we do need to ask in terms of harmless error. But in general, the real focus needs to be on the language- the plain language of the statute without, you know, encumbering it with a bunch of considerations that just aren't addressed in the statute. Okay. I think we're going to have to stop there, if that's all right. Yes. Thank you, Judge. Okay. Thank you very much. I believe you have about six minutes left, Ms. Christensen. Okay. Thank you. I'm not used to 15, so my timing was a little off. I'd like to start first talking about defendants who were sentenced with the 2005 guidelines, who then received retroactive amendments. This idea that the retroactive amendments wouldn't make up for the increases of the other enhancements, that's not the way these retroactive guidelines work. You can get decreases retroactively, but because of the Ex Post Factual Clause, you cannot get increases retroactively. So every other person sentenced as Mr. Bethany with the 2005 guidelines comes back and can qualify with some, you know, for reductions, but not increases. So he's not trying to get the benefit that any other defendant in his shoes didn't already get, mostly. And then switching back and forth, and I agree with the government counsel that this is a complicated issue. I have on my office wall post-it notes that are about three feet long about each portion of this case, because you have to look at the guidelines and you have to look at the statutes in some portion. But if we're talking about the Fair Sentencing Act and the statute part of it, and drug amounts, you only look to what was found or admitted beyond a reasonable doubt. And this court said in Shaw that to determine eligibility under the Fair Sentencing Act, you only look to the statute and to the elements. You don't look to the guideline range and how much the defendant could have been or was even found accountable for. You look to what was found. In this case, we have two problems with that. One is the court, well, basically the lien problem. The court made the finding not beyond a reasonable doubt by a preponderance of the evidence. I will also go to the district court's statement that the mandatory minimum was the farthest thing from his mind. He said that in the past tense. He was referring to the first sentence and I don't think he necessarily meant that to refer to now the mandatory minimum as the furthest thing from my mind. But either way, when a mandatory minimum is 20 years, it's different in a judge's mind than when it's 10 years or five years. And the court did in both instances sentence below the guideline range. So there is reason to think that the bottom that anchors the case. Let's see. I agree that this is essentially line drawing. We're all drawing lines. Congress drew lines. And we have to look to Congress's intent in passing this legislation. And as I started with, congressional intent was a remedial statute to rectify the wrongs that have been done over the last 30 years or more in the sentencing guidelines and in the statutes. And the line that should be drawn hinges on whether there's this imposed sentence. Right. That's what I wanted you to talk about because government is relying very heavily on language in the statute that, you know, once imposed, always imposed. It doesn't matter how it gets changed later, whether it's vacated, whether it's resentencing. So why isn't that right? I think those of us who practice in criminal law know that sentences are imposed and they can be reimposed. Particularly those of us who practice appellate law, sentences are vacated. And it is as if the sentence doesn't exist. In some cases, it calls it a nullity or it becomes a clean slate. There is no sentence. Mr. Bethany was returned to the MCC. He was still convicted but not sentenced. And the BOP, as I think you noted, cannot calculate an outdate because he has no sentence. So in our common usage of the word imposed, it is whether the defendant is currently under a criminal justice sentence. And at the time he was resentenced, he was not. If he had been, the judge was essentially sentencing him twice. And we obviously know that that's not appropriate under the double jeopardy clause. So would that make, as a practical matter, would that make a difference to the defendant in terms of his eligibility for programs, things of that nature while incarcerated? Certainly. While he's not under a sentence, he can't go to a Bureau of Prisons facility, a prison. He has to be in a pretrial detention. So he doesn't have the opportunity to work in the same kind of situations. He certainly wouldn't be released in any situation such as compassionate release or to halfway house because there's no release. The BOP has no jurisdiction over him at that point. So it does make a difference whether it's imposed or not imposed. And at that point, he was waiting. Eligibility for drug programs? Correct. That's a BOP program. So he would not be eligible for that. He's on ice. He's just sitting there. In other words, waiting to find out how he's going to spend the next up to years. Right. From Mr. Bethany's point of view, it's essentially the same as it was before he was sentenced the first time. He's sitting in MCC. He's waiting to be sentenced and then to be sent off again to the BOP. In his mind, he does not have a sentence. The sentence is vacated. It's annullity. In the lawyer's mind, it's what's allowing us to continue to do this. So I wouldn't have the right to be here right now. This court would have no jurisdiction because if the only imposed sentence was the one imposed in, now I've forgotten, 2013, we can't appeal from that. My time to appeal is completely different. So I would not be here. There is a new imposed sentence that allows jurisdiction for the district court to impose that sentence and then this court to take that case on appeal because of the imposed sentence. Okay. I think your time is now up unless Judge Ripple or Judge Scudder has other questions. Thank you, Your Honor. All right. Thank you. Thank you, Ms. Bonamici. We appreciate your appearing this way and the case under advisement. Thank you. Thank you, Your Honor.